

1

2

3          UNITED STATES BANKRUPTCY COURT

4          EASTERN DISTRICT OF CALIFORNIA

                SACRAMENTO DIVISION
5

6

7   In re                          )   Case No. 09-36862-A-7
                                    )
8   DONALD J. PERMAN, SR.,          )
                                    )
9                                   )
                                    )
10          Debtor.                 )
                                    )
11  _____ )
                                    )
12  BETTY GOBLE,                    )   Adv. No. 09-2729
                                    )
13                                  )
            Plaintiff,              )
14                                  )
    vs.                             )
15                                  )
    DONALD J. PERMAN, SR.,          )   Date: April 27, 2010
16                                  )   Time: 9:30 a.m.
                                    )
17          Defendant.              )
                                    )
18  _____ )

19                           MEMORANDUM

20      Plaintiff Betty Goble's complaint asks for two forms of

21  relief: the denial of defendant Donald J. Perman's chapter 7

22  bankruptcy discharge; or, if he will receive a discharge, a

23  judgment determining that her $15,000 loan to him is excepted

24  from it.

25      Insofar as the complaint seeks to deny discharge pursuant to

26  11 U.S.C. § 727(a), Goble maintains that Perman falsified his

27  schedules and statements by materially under-reporting his

28  employment income.  She also complains that Perman failed to give

**FILED**

APR 2 8 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

her timely notice that he had filed his chapter 7 petition.

The evidence does not support the assertion that Perman under-reported his employment income on Schedule I and on Official Form 22A.

Schedule I reports gross monthly income of $3,094.40 from employment. Annualized, this is $37,132.90. Based on employment income received during the six months prior to the filing of this bankruptcy case, Form 22A reports Perman's annual income as $37,132. Hence, Schedule I and Form 22A are consistent and this income is corroborated by Perman's wage stubs for the six months prior to bankruptcy. See Exhibit 3.

In the two calendar years prior to bankruptcy, Perman reported employment income of $38,554 in 2008 and $41,308 in 2007 on his federal income tax returns. See Exhibits 1 and 2. While this is slightly higher than the income reported in the bankruptcy documents, the difference is not material. That is, if Perman's income approached the level he earned in 2007 or 2008, his income still would not exceed the median income for a single debtor residing in California. See 11 U.S.C. § 707(b)(7)(A).

Further, Perman explained at trial that his employer began cutting back on his overtime beginning sometime in 2007. As a result, in recent years his employment income has been trending downward.

All in all, the bankruptcy schedules are corroborated by Perman's financial records and his testimony.

The contrary evidence offered by Goble consisted of wage stubs showing Perman received annual employment income of

-2-

$46,121.24 in 2004, $49,021.80 in 2005, and $48,280.17 in 2006. For the period from January 1 through July 8, 2008, Perman received cumulative employment income of $22,409.05.  See Exhibit E.

This evidence is not inconsistent with Perman's evidence. First, other than the income for 2007, Goble's evidence is for periods that predate Perman's evidence.  And, Perman testified that in 2007 his employer restructured and reduced his hours and overtime resulting in a shrinking paycheck.  This accounts for the downward trajectory of his income reflected by his wage stubs and tax returns.

Goble also maintained that Perman received income from a second job at Moren's Window Covering that he had not reported to either the IRS or this court.  However, Mr. Moren testified that he has not employed Perman since 2007.

Based on the evidence, the court cannot conclude that Perman filed false statements in connection with this bankruptcy case regarding his income.

Nor did Perman fail to give Goble notice of his bankruptcy case.  He identified Goble as a creditor but indicated on his schedules that notice should go to Goble's state court attorney. When the bankruptcy case was filed, there was a pending state court suit between Goble and Perman.  While they had negotiated a settlement, Perman had not paid the amount required by the settlement amount and the suit had not been dismissed.

While the better practice would have been to give notice directly to Goble as well as to her attorney, the fact remains her attorney received notice and he eventually notified her of

-3-

the bankruptcy case.  This notification came approximately five days prior to the deadline for filing complaints pursuant to 11 U.S.C. §§ 523(c) and 727(a).  Despite the late notice, Goble was able to file a timely complaint.

A review of the bankruptcy case file and Goble's testimony suggests no prejudice resulted from the late notice.  A timely complaint was filed and, because this was a "no-asset" case, Goble and the other creditors were not required to file proofs of claim.  As a result, 11 U.S.C. § 523(a)(3) is not applicable.

When asked by the court what harm was caused by the late notice, Goble responded only that she was unable to attend the meeting of creditors.  However, she was able to confer with the trustee after she became aware of the case.  And, to the extent Goble wanted or needed information from Perman, she had the benefit of the discovery conducted in a state court civil suit she was prosecuting before the bankruptcy case was filed, and she had access to discovery both before and after the filing of this proceeding.  See Fed. R. Bankr. P. 2004, 7026-7036.

To the extent the complaint seeks to deny Perman's discharge pursuant to section 727(a), judgment will be entered for Perman.

Goble also demands that a $15,000 loan she made to Perman be declared nondischargeable because Perman falsely promised to repay it.  That is, at the time of the loan he harbored the secret intention of never repaying the loan.

The written evidence of this loan consists of two cashier's checks dated August 8, 2005.  One in the amount of $14,000 was made payable to Perman and the second in the amount of $1,000 was paid to Perman's former spouse.  The first check includes a

-4-

notation on the memo line that it is a "loan," and the second
check payable to the former spouse states on the memo line, "loan
to Don Perman Sr."

There is no other documentation of a loan.  According to
Goble, Perman verbally agreed to repay the $15,000 by February
2008.  She believes that his failure to do so is evidence that he
never intended to repay her.

Perman does not deny he received the $14,000 or that the
$1,000 was paid to his former spouse at his request.  He
testified, however, that these checks were gifts.  At the time
Goble gave him this money, she and he cohabited.  And, it was
only after they stopped living together in November or December
2007 that Goble demanded payment.

The fact that both checks contain notations that they were
loan seems, at first blush, to corroborate Goble's version of the
facts.  And, the absence of payments combined with Perman's
leaving Goble shortly before the alleged February 2008 due date
might corroborate an intention to never repay the loans.

However, the record contains something troubling.

When filed, Goble's complaint was accompanied by an
application to waive the filing fee.  In the application she
disclosed that she had filed a bankruptcy case in Modesto in
2006.  A search of the court's electronic case files reveals that
she filed Case No. 05-32944-C-7 on September 27, 2005.  This was
approximately seven weeks <u>after</u> Goble made the alleged loan to
Perman.

The court takes judicial notice of that petition and the
schedules and statements accompanying it.  A thorough review of

-5-

those documents reveals that Perman and his outstanding debt to
Goble is not mentioned.  Any such debt should have been disclosed
on either line 15 (accounts receivable) or line 17 (other
liquidated debts owing debtor) of Schedule B.  On both lines
Goble stated, under penalty of perjury, "none".

Goble has given contradictory statements under oath.  In
this proceeding she claims the $15,000 was a loan but in her own
chapter 7 bankruptcy case she stated that no one owed her money.

The court concludes that the $15,000 was a gift.  This is
consistent with the fact that no repayments were made and none
were demanded by Goble until after she and Perman separated.

Had the court concluded that the $15,000 was a loan and not
a gift, it would still hold for Perman.  Because the loan was not
identified as an asset by Goble in her bankruptcy case, it
remains property of her bankruptcy estate.  See 11 U.S.C. §
554(d).  As property of her bankruptcy estate, only the
bankruptcy trustee has the right to pursue its collection.  Goble
is not the real party in interest.[1]

---

[1] Even though the court has concluded that no loan was made,
Goble's bankruptcy trustee (who, coincidentally, is the same
trustee appointed in Perman's case), may still have reason to
examine the evidence filed in this case.  The copy of the $1,000
cashier's check introduced at trial by Goble included the
transaction receipt issued by Mokelumne Federal Credit Union to
Goble.  That receipt, in addition to indicating the account
number, states that the account balance as of August 8, 2005 was
$40,646.67.  A review of Goble's Schedule B filed on September
27, 2005, discloses this account but indicates the account
balance was only $103.00.  Her other schedules and statements
indicate she subsisted on social security; during 2002, 2003, and
2004, she had employment or business income of $29,616, $21,241,
and $16,705, respectively; she had no other income; she made no
payments greater than $600 to creditors in the 90 days prior to
filing her petition; she made no payments to insiders in the year
prior to the petition; she lost no property in connection with

A separate judgment will be entered in favor of the
defendant.

Dated: 28 April 2010

By the Court

Michael S. McManus, Judge
United States Bankruptcy Court

---

any legal proceeding; she made no gifts greater than $200; she
made no charitable contributions greater than $100; and no one
was holding property for her benefit.  Where then did the
$40,646.67 come from and where had it gone when she filed her
bankruptcy case seven weeks after issuing this check?

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

### CERTIFICATE OF SERVICE

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was served by mail to the following entities listed at the address(es) shown below.

Betty Goble
PO Box 1192
Woodbridge, CA 95258

Donald Perman
1407 W Tokay
Lodi, CA 95242

Office of the US Trustee
501 I St, Ste 7-500
Sacramento, CA 95814

**DATED:**  APR 2 8 2010       **By:** _____
                                      Deputy Clerk

                                      Sarah Head